UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES MURRAY,<br><br>    Defendant. | Case No. CR 12-0278 EMC (LB)<br><br>**ORDER**<br><br>[Re: ECF Nos. 64, 65, 66, 67] |

**INTRODUCTION**

Defendant James Murray filed four discovery motions: (A) a motion for discovery under the criminal rules, *Brady v. Maryland*, *Giglio v. United States*, and the Jencks Act, 18 U.S.C. § 3500; (B) a motion for disclosure of the grand jury transcripts; (c) a motion for a bill of particulars and an accounting; and (D) a motion for discovery of prior acts evidence. *See* ECF Nos. 64, 65, 66, and 67. The government opposed all motions. *See* ECF Nos. 78, 79, 80, and 81. Mr. Murray did not reply to the oppositions.

The court held a hearing on January 17, 2013 and now denies all four motions and recommends that the district court gear the timing of certain disclosures to a trial date.

**STATEMENT**

The criminal charges in this case involve alleged wire fraud by James Murray relating to (A) credit card transactions that he processed through a point-of-sale (POS) terminal in his home and

1  (B) a hedge fund called Market Neutral Trading (MNT) that purported to invest in domestic
2  equities. *See* Superseding Indictment, ECF No. 30, ¶ 7.

3  The indictment alleges the following about the two alleged schemes to defraud.

4  As to the credit card transactions, Murray established a merchant account for Jones, Moore,
5  and Associates (JMA), a company that purported to provide audit and accounting services. *See*
6  *id.* ¶ 4. He allegedly processed the credit card transactions through the merchant account and
7  then "refunded" them even though he had no funds in the JMA merchant account to cover the
8  refunds. *See id.* ¶¶ 7, 8(j), 10. (If true, this defrauds the merchant bank – here, Chase
9  Paymentech – because merchant banks credit refunds with the expectation of payment from the
10 business.) There were no funds in the JMA account because Murray transferred the funds to his
11 personal account. *See id.* ¶¶ 7, 8(j), 10. The wire fraud counts related to the credit card POS
12 scheme are counts one through four. *Id.* at 7. The indictment also alleges aggravated identify
13 fraud in count eleven relating to the unauthorized use of Lisa B's California driver's license in
14 connection with the wire fraud counts one through four. *See id.* ¶ 8(c) and 6.

15 As to the hedge fund, Murray allegedly solicited investors with inflated representations of the
16 fund's historical performance backed up by phony audit reports prepared by JMA. *See id.* ¶¶ 7,
17 8(d)-(i), 9. As a result, investors invested over $2.4 million. *Id.* ¶ 8(i). The wire fraud counts
18 regarding the scheme to defraud the investors are counts five through ten. *See id.* at 7.

19 The district court referred all discovery motions to the undersigned on August 27, 2012. *See*
20 ECF No. 43. The court held a hearing on January 17, 2013.

## ANALYSIS

### I. *BRADY, GIGLIO, AND RULE 16 DISCOVERY*

Mr. Murray's first motion asks for discovery under Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, *Giglio v. United States*, and the Jencks Act, 18 U.S.C. § 3500. Motion, ECF No. 64.[1] The government clarified at the hearing that it has produced all Rule 16 and *Brady*

---

[1] Mr. Murray also mentions Rule 26.2, which extends the Jencks Act to suppression hearings and sentencings. The analysis is the same.

discovery in its possession and will continue to do so on an ongoing basis if it identifies any additional discovery. *See also* Letter, ECF No. 64-1 at 2. It also produced early Jencks (whether true Jencks or witness statements captured by someone such as an investigator or agent) now and is withholding only the statement provided by Lisa Murray to the agent.

The issue really is about disclosure of information obtained from Lisa Murray, Mr. Murray's estranged wife. Mr. Murray wants that information now. *Id.* at 4, 12-14, 20. The theory is that the aggravated identity fraud charge, which is based on the use of Ms. Murray's California driver's license without her permission, necessarily must be based on information provided by Mrs. Murray to the government that is protected by the marital communications privilege. *Id.* at 4, 20. The government opposes the motion. The government clarifies that Ms. Murray did not receive immunity or a non-prosecution agreement and instead is a victim of the identity theft alleged in count eleven. Opposition, ECF No. 80 at 2. She did not testify before the grand jury, but the government did interview her and prepared a report about the interview. *Id.* That report technically is not Jencks because it is not Ms. Murray's own statement and she did not review it or adopt it as her own. *Id.* at 3. Still, the government will disclose a summary of the information obtained from Ms. Murray if it calls her as a witness, and it said that the report has no *Brady* or *Giglio* information.[2] *Id.* at 2.

Thus, the issue is not *Brady*, *Giglio*, or Rule 16 and instead is about early production of Jencks material (or witness statements that the government treats as if the statements were Jencks). The court has no authority to order early production of Jencks. *See United States v. Cerna*, 633

---

[2] The *Brady* obligation is that a prosecutor has to provide information to a defendant that is exculpatory or impeaching and material to guilt or punishment. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972); *United States v. Jerrigan*, 451 F.3d 1027, 1030 (9th Cir. 2006). Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *See Kyles v. Whitley,* 514 U.S. 419, 433, 437 (1995). The materiality standard is met when "the favorable evidence could reasonably be taken to put the whole case in a different light so as to undermine confidence in the verdict." *Banks v. Dretke*, 540 U.S. 668, 698-99 (2004). *Brady* requires disclosure so that the information can be used effectively. *See United States v. Cerna*, 633 F. Supp. 2d 1053, 1056 (N.D. Cal. June 26, 2009) (citing *Kyles*, 514 U.S. at 433, 437).

1  F. Supp. 2d 1053, 1056 (N.D. Cal. June 26, 2009). The government could withhold Jencks
2  statements until after Ms. Murray testifies. *Id.* Instead, the government proposes producing
3  Jencks materials on a time line geared to trial (which is standard in cases involving witness
4  safety). *See id.* at 1062 (pegging disclosure deadlines to trial date).

5  Mr. Murray wants the information now because if it is privileged, then he wants to file a
6  motion to dismiss at least count eleven and possibly all of the counts. The government's view is
7  that not only is the information not discoverable, but also, it is not privileged. Whatever the legal
8  answer is about privilege, the district court can authorize disclosures on a time frame geared to
9  the trial date that allows an efficient and orderly motions and trial schedule. *See United States v.*
10 *W.R. Grace*, 526 F.3d 499, 508 (9th Cir. 2008). The court observes that this is not an enormously
11 complicated issue. Also, given the nature of the charges as described in the indictment, it seems
12 unlikely that the entire case stands or falls on testimony about the use of Ms. Murray's license.

13 **II. DISCLOSURE OF GRAND JURY TRANSCRIPTS**

14 Mr. Murray seeks access to grand jury records on the ground that the aggravated identity fraud
15 count necessarily is based on evidence from Ms. Murray. Motion, ECF No. 65 at 4. Mr. Murray
16 "posits" that the government threatened to indict Ms. Murray as a co-conspirator, caused her to
17 break off her relationship with her husband and become a "victim," and thereby created an
18 exception to the marital communications privilege. *Id.* This rises to the level of a
19 constitutionally-impermissible abuse of the grand jury, he concludes, and he ought to get access
20 to the transcripts and evidence derived from Ms. Murray. *Id.* at 6, 8. The government opposes
21 disclosure, noting that Ms. Murray did not testify and only a summary case agent testified.
22 Opposition, ECF No. 78 at 2. If that agent is a trial witness, the government will disclose the
23 transcript as Jencks. *Id.* This disclosure will be on a time line geared to the trial date. The
24 government has produced all *Brady* material already (and will produce new *Brady* if it obtains
25 more). *See id.*

26 A defendant seeking disclosure of grand jury records must demonstrate a particularized need
27 for the disclosure. *See United States v. Perez*, 67 F.3d 1371, 1381 (9th Cir. 1995) *withdrawn in*
28 *part on other grounds*, 116 F.3d 840 (9th Cir. 1997) (en banc). The standards for disclosure are

as follows: (A) the desired material will avoid a possible injustice; (B) the need for disclosure is greater than the need for continued secrecy; and (C) only the relevant portions will be disclosed. *Id.*

Here, the government has confirmed that Ms. Murray did not testify and has not received immunity or other consideration for whatever information that she has provided. Opposition, ECF No. 78 at 2; Opposition, ECF No. 80 at 2. The government prepared a report and will disclose a summary of it geared to the trial schedule if she is a witness. Opposition, ECF No. 80 at 2. The government does not have any *Brady* or *Giglio* information related to Ms. Murray. *Id.*; *see supra* at 3. Mr. Murray has not established a particularized need for the records.

## III. MOTION FOR A BILL OF PARTICULARS AND FOR AN ACCOUNTING

Mr. Murray wants the government to prepare an accounting of the funds that he allegedly misappropriated or, alternatively, disclose its theory of loss for the wire fraud. Opposition, ECF No. 66 at 1. He also wants a bill of particulars that states for counts one through ten the amount of the loss, the amount of any gain, the calculation of any fees, costs, unauthorized funds, and a detailed accounting of any funds that the government claims that Mr. Murray misappropriated. *Id.* at 1-2. Mr. Murray acknowledges that loss is not an element of wire fraud[3] but argues that

---

[3] The elements of wire fraud are as follows:

1. The defendant made up (A) a scheme or plan to defraud <u>or</u> (B) a scheme or plan to obtain money or property by false or fraudulent pretenses, representations, or promises;

2. The defendant knew that (A) the course of conduct in which he was engaged was misleading <u>or</u> (B) the promises or statements were false;

3. The misleading conduct <u>or</u> the false statements were material (such that they would reasonably influence a person to part with money or property);

4. The defendant acted with the intent to defraud; and

5. The defendant used a wire communication in interstate commerce to carry out an essential part of the scheme.

*See* 18 U.S.C. § 1343.

1 whether the victims suffered loss is relevant to Mr. Murray's intent and to sentencing
2 enhancements. *Id.* at 3. He also argues that providing raw bank and institutional financial
3 records does not allow him to access the discovery, particularly given that he is in custody. *Id.* at
4 4. The government opposes the motion, arguing that it disclosed all financial records, Mr.
5 Murray can hire his own accountant to analyze the financial records, the loss calculation is
6 relevant to sentencing and is not an element of the offense, and the government will disclose any
7 expert testimony for trial under Rule 16. Opposition, ECF No. 79 at 8-9.

8 An indictment "must be a plain, concise, and definite written statement of the essential facts
9 constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "[A]n indictment is sufficient if it,
10 first, contains the elements of the offense charged and fairly informs a defendant of the charge
11 against which he must defend, and, second, enables him to plead an acquittal or conviction in bar
12 of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974)
13 (citations omitted). The defendant may move to require the government to supplement an
14 incomplete indictment with a bill of particulars that more fully discloses the nature of the charges.
15 Fed. R. Crim. P. 7(f). But a bill of particulars may not be used as a discovery device to acquire
16 evidentiary details about the government's case. *See, e.g., United States v. Chen*, 378 F.3d 151,
17 162-63 (2nd Cir. 2004). Instead, the purpose of a bill of particulars is to (1) inform the defendant
18 of the nature of the charge against him with sufficient precision to allow the defendant to
19 adequately prepare for trial, (2) avoid or minimize the danger of surprise at trial, and (3) protect
20 against double jeopardy. *United States v. Ayers*, 924 F.2d 1468, 1483 (9th Cir. 1991). Moreover,
21 defendants are "not entitled to know all the *evidence* the government intends to produce but only
22 the *theory* of the government's case." *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986).

23 The indictment here alleges the elements of the offense adequately. This is not a complicated
24 case. The indictment alleges two schemes. The first is a scheme involving point-of-sale credit
25 card authorizations and "refunds" that were made even though there were no funds in the JMA
26 merchant account. Superseding Indictment ¶¶ 7, 8(j), 10. The second involves solicitations to
27
28

1   investors with allegedly inflated representations of the fund's historical performance backed up
2   by phony audit reports prepared by JMA. *See id.* ¶¶ 7, 8(d)-(i), 9. As a result, investors invested
3   over $2.4 million. *Id. ¶* 8(i).

4   Here, the government has produced full discovery already, including all of the financial
5   records. Discovery such as the point of sale authorizations, bank account information,
6   solicitations to investors, and the JMA audit reports fully illuminate the two frauds that the
7   government alleges. Even if the indictment did not describe the frauds (and the court's view is
8   that it does sufficiently), full discovery obviates the need for a bill of particulars. *United States v.*
9   *Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979).

10   Moreover, if the government relies on expert testimony about loss, it will make the appropriate
11   disclosures under Rule 16(a)(1)(G). What is at issue here is Mr. Murray's ability to calculate the
12   loss, which is not an element of the charged offenses. But Mr. Murray has all of the underlying
13   evidence, and he has no entitlement to have the Government provide him with precise loss
14   calculations. In *United States v. Shteyman*, No. 10 CR 347(SJ), 2011 WL 2006291, at *4
15   (E.D.N.Y. May 23, 2011), the defendant in a health-care fraud case asked the government to
16   segregate from the discovery it already provided the loss calculations that it attributed to the
17   fraud. The court held that he was not entitled to discovery on how the government would prove
18   the loss. *Id.* The result is the same here. Loss really is about sentencing. The court appreciates
19   Mr. Murray's concern: he may feel that the optics of the case before a jury are better if the
20   government's theory is that the investors suffered no loss, and he prefers to know that now. That
21   preference does not establish entitlement.

22   From a case-management perspective, however, the district court is charged with effectuating
23   the speedy and orderly administration of justice. *See W.R. Grace*, 526 F.3d at 508. Under this
24   mandate, the district court has the authority to issue pretrial case management and discovery
25   orders designed to ensure that the relevant issues to be tried are identified and that the parties are
26   adequately and timely prepared so that the trial can proceed efficiently and intelligibly. *Id.* at
27   509. In *W.R. Grace*, for example, the Ninth Circuit upheld – in a case with a relevant time period
28   spanning nearly 30 years with more than 1000 victims – deadlines that included preliminary

1 disclosure of witnesses and exhibits roughly 16 months before trial and final lists of exhibits, witnesses, and expert disclosures roughly a year before trial. *Id.* at 501.

This case is not *W.R. Grace*. Still, a case management order requiring disclosure at some point before trial of all exhibits and witnesses would ensure the efficient and orderly presentation of the trial and address Mr. Murray's concerns. For example, if the government relies on expert testimony, the district court can set a time period for disclosure before trial so that Mr. Murray can put together his case sufficiently to allow an efficient and orderly trial. Similarly, disclosure of exhibits and a witness list a certain number of days before trial will allow Mr. Murray the time he needs to prepare, thus facilitating an orderly trial.

## IV. MOTION FOR DISCLOSURE OF PRIOR ACTS EVIDENCE

Mr. Murray asks for disclosure of Rule 404(b) prior acts evidence 90 days before trial so that he can investigate it adequately (given the large number of financial documents at play in this case). *See* Motion, ECF No. 67 at 3-4. The government responds that the appropriate time to address timing is after the district judge sets a trial date and that these are case management issues for the district judge. Opposition, ECF No. 81 at 2.

Again, as in *W.R. Grace*, the district court has the authority to issue case management orders designed to ensure that the relevant issues to be tried are identified and the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly. 526 F.3d at 509.

## CONCLUSION

The government has satisfied its discovery obligations. Mr. Murray has concerns about access to what Ms. Murray said, and he may want to file a dispositive motion raising marital privilege (an issue already addressed by Judge Cousins, *see* ECF No. 82 at 3). The district court has the authority to order disclosure under *W.R. Grace* on a time period geared to the trial date. The same is true for the remaining evidence: expert disclosures about loss to be introduced at trial, the trial exhibits themselves, and the notice of 404(b) evidence.

The undersigned discussed with the government whether it had a view now about the appropriate time period before trial to make its disclosures. The government reiterated its position that this is a case management issue for the district court. To aid the district court's case

management, the undersigned suggests that the parties each file a one-page case management conference statement with the district court before the next court appearance with the following information: anticipated length of trial and number of days before trial (e.g., 60 days before trial) for expert disclosures, trial exhibits, disclosure of Ms. Murray's report to the agent, and the dispositive motions hearing.

This disposes of ECF Nos. 64, 65, 66, and 67.

**IT IS SO ORDERED.**

Dated: January 17, 2013

_____
LAUREL BEELER
United States Magistrate Judge